526 A.2d 983

**John Emil BOMHARDT**

**v.**

**STATE of Maryland.**

**No. 1509, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

June 11, 1987.

Andrew J. Groszer, Jr., Cockeysville, for appellant.

Daniel R. Anderson, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellee.

Argued before GILBERT, C.J., and BLOOM and KARWACKI, JJ.

GILBERT, Chief Judge.

"If, as some assert, the law is the light of the land, taxes are the batteries that power the light." [1]

Probably since taxes were first levied, few have enjoyed paying them. Fewer yet have defied the right of the sovereign to assess taxes. Still fewer have been successful in their defiance of the tax laws. This case represents one of the latter majority.

As part of his continuing battle against paying Maryland income taxes, John Emil Bomhardt avers that the Attorney General was not empowered to sign a Criminal Information. Proceeding from that premise, Bomhardt reasons that since the Attorney General did sign the Criminal Informations upon which Bomhardt was tried the convictions are invalid. Hence, he urges us to reverse the judgments of the Circuit Court for Anne Arundel County and concomitantly direct his release from confinement. We shall do neither but rather affirm the judgments. We explain.

Mr. Bomhardt's first appeal to this court was the result of his being convicted of willfully failing to file State income tax returns for the years 1981, 1982, and 1983. In his initial appeal he posited six questions, including a challenge to the authority of the Attorney General to act as prosecutor. We perceived no error in the trial proceedings with respect to five of the issues raised by Bomhardt; but, in an unreported opinion, *Bomhardt v. State*, No. 1453, September Term, 1985 (filed September 8, 1986) (unreported), we ordered "a limited remand under Rule 1071 to the trial court for the sole purpose of ascertaining whether the Attorney General possessed authority to maintain this prosecution." The convictions remained in effect pending those further proceedings.

Pursuant to that limited remand, a hearing was held before Judge Eugene M. Lerner. At that hearing a March

---

1. Attributed to Jim Oigan. *See Republic Ins. Co. v. Bd. of County Comm'rs,* 68 Md.App. 428, 429 n. 1, 511 A.2d 1136 (1986).

9, 1984, letter from then-Governor Harry Hughes to the then-Attorney General Stephen H. Sachs was admitted into evidence. The letter read, in pertinent part:

"... I hereby authorize and direct the Attorney General to act with the same powers as the State's Attorney for Anne Arundel County in the investigation and prosecution of cases involving criminal violations of the Maryland income tax laws which are brought to your attention by the Comptroller's Office for prosecution in Anne Arundel County.

.... You are authorized to use any necessary subpoena powers to present to the Grand Jury for Anne Arundel County any evidence or testimony you consider appropriate to carry out this authorization. You are further authorized, in this category of criminal actions, to act with the same authority as the State's Attorney for Anne Arundel County to bring and prosecute resulting criminal charges."

Judge Lerner ruled that the "gubernatorial authorization [in the March 9 letter] cloaked the Attorney General with the requisite authority under Article V, § 3 of the Constitution of Maryland to investigate and prosecute [Mr. Bomhardt]." Consequently, he ordered the convictions to stand.

Article V, § 3 of Maryland's Constitution provides, in pertinent part:

"(a) The Attorney General shall:

.    .    .    .    .

(2) Investigate, commence, and prosecute or defend any civil or criminal suit or action or category of such suits or actions in any of the Federal Courts or in any Court of this State, or before administrative agencies and quasi legislative bodies, on the part of the State or in which the State may be interested, which the General Assembly by law or joint resolution, or the Governor, shall have directed or shall direct to be investigated, commenced and prosecuted or defended.

(3) When required by the General Assembly by law or joint resolution, or by the Governor, aid any State's Attorney or other authorized prosecuting officer in investigating, commencing, and prosecuting any criminal suit or action or category of such suits or actions brought by the State in any Court of this State."

The Court of Appeals has explained that Article V, § 3(a)(2) "vests the Attorney General with ... prosecutorial powers." *In re Special Investigation No. 281*, 299 Md. 181, 199, 473 A.2d 1, 10 (1984).

The Governor's letter authorized and directed the Attorney General to "act with the same powers as the State's Attorney ... in the investigation and prosecution of [the instant case and authorized the Attorney General] to act with the same authority as the State's Attorney ... to bring and prosecute resulting criminal charges." [2] Pursuant to Article V, § 3, similar grants of authority and power have been conferred by the Governor on the Attorney General, *see, e.g., In Re: Special Investigation No. 195*, 295 Md. 276, 277, 454 A.2d 843 (1983); *Wiener v. State*, 290 Md. 425, 428, 430 A.2d 588, 591 (1981), and upheld on appeal, *In re Special Investigation No. 281*, 299 Md. 181, 199–200, 473 A.2d 1, 10 (1984), *In Re: A Special Investigation No. 227*, 55 Md.App. 650, 655, 466 A.2d 48, 51, *cert. denied*, 297 Md. 417 (1983).

As Chief Judge Murphy opined for this Court [3] in *State v. Hunter*, 10 Md.App. 300, 305, 270 A.2d 343, 345 (1970), *modified on other grounds*, 263 Md. 17, 278 A.2d 608 (1971), "Under the Constitution and laws of Maryland, the

---

**2.** For a background of the relationship between the offices of State's Attorney and Attorney General, see *Murphy v. Yates*, 276 Md. 475, 348 A.2d 837 (1975); *State v. Hunter*, 10 Md.App. 300, 305–07 n. 5, 270 A.2d 343, 345–46 (1970), *modified on other grounds*, 263 Md. 17, 278 A.2d 608 (1971).

**3.** The Honorable Robert C. Murphy was appointed in 1967 as the first Chief Judge of the Court of Special Appeals. He served in that position until August 11, 1972, when he was appointed Chief Judge of the Court of Appeals, a post he currently holds.

State's Attorney is a constitutional officer elected by the people and entrusted by them with the prosecution of persons accused of crime." It is the duty of the State's Attorney to "prosecute ..., on the part of the State, all cases in which the State may be interested...." Md.Ann. Code art. 10, § 34. In performing that duty, it is within the State's Attorney's discretion "to determine the mode or means ... to initiate the criminal charges." *Wodoslawsky v. State*, 36 Md.App. 654, 659, 374 A.2d 917, 920, *cert. denied*, 281 Md. 746 (1977), 434 U.S. 1068, 98 S.Ct. 1248, 55 L.Ed.2d 770 (1978).

The offense of willfully failing to file a state income tax return is a misdemeanor, Md.Ann.Code art. 81, § 320, and is within the district court's exclusive original jurisdiction, Md.Cts. & Jud.Proc.Code Ann. § 4–301(b)(1). The prosecution for that offense may be commenced by either a criminal information or a statement of charges. Md.Rule 4–201(b)(1) and (2). Md.Rule 4–202(b) requires that a criminal information must be "signed by the State's Attorney of a county or by any other person authorized by law to do so."

The State's Attorney for Anne Arundel County was fully empowered to sign and file in the district court a criminal information against Mr. Bomhardt alleging willful failure to file 1981, 1982, and 1983 State income tax returns. In the matter *sub judice*, on or around April 10, 1985, the Attorney General filed in the district court[4] a criminal information which had been signed by the Attorney General.[5]

---

**4.** Upon Mr. Bomhardt's demand for a jury trial, the cases were removed to the circuit court and the offenses were tried on the charging documents filed in the district court. Md.Rule 4–201(c)(3).

**5.** On the first day of trial, Mr. Bomhardt cited the three year statute of limitations for commencement of prosecution for willful failure to file a State income tax return, Md.Ann.Code art. 81, § 321, and moved to dismiss count one which alleged his willful failure to file a 1981 return. The limitations period for that offense began April 15, 1982. The charging document in the record at that time was a statement of charges issued by a judicial officer on May 2, 1985. The State explained that a criminal information was filed in April prior to the end of the statutory period. When service was attempted soon there-

Under Article V, § 3, together with the direction contained in the Governor's letter, the Attorney General was fully vested with the power to "commence" and prosecute these criminal charges.

Governor Hughes's letter to the Attorney General extended authority to investigate and prosecute "cases involving criminal violations of the Maryland income tax laws which are brought to [the Attorney General's] attention by the Comptroller's Office for prosecution in Anne Arundel County." Mr. Bomhardt argues that this extension exceeds the "category of ... suits or actions" contemplated by Article V, § 3, thus making the grant of authority "overbroad in nature and ... unconstitutional." We do not see it that way.

Past gubernatorial grants of authority to the Attorney General under Article V, § 3 of the Constitution have included investigation and prosecution in the following categories of actions: various forms of criminality in Frederick County including illegal drug activities and State income tax violations, *Winters v. State,* 301 Md. 214, 220, 482 A.2d 886, 889 (1984); Medicaid fraud, *In Re: Special Investigation No. 244,* 296 Md. 80, 87–88, 459 A.2d 1111, 1114–15 (1983);

---

after, Mr. Bomhardt refused to accept the summons, and a new statement of charges that led to Mr. Bomhardt's arrest was issued in May.

During the trial, the State introduced a copy of a statement of charges against Mr. Bomhardt which had been issued by a judicial officer of the district court on April 10, 1985. Accompanying that statement of charges were three undated writings entitled "COUNT 1 ... COUNT 2 ... [and] COUNT 3," respectively. The writings elaborated on the charges. Judge Lerner ruled that a criminal information had been "properly filed," and he denied the motion to dismiss count one. We note the erratic and confusing manner in which the charging documents were processed in this case and suggest that the better practice is to proceed with *either* an information *or* a statement of charges as Md.Rule 4–201 provides and to label clearly a criminal information when that document is used. While these suggestions relate to form rather than substance, *see Brown v. State,* 285 Md. 105, 108–09, 400 A.2d 1133, 1135–36 (1979), consistency and clarity of form in charging documents both simplify and increase the effectiveness of litigation as well as remove unnecessary distraction from substantive issues.

misuse of state services and personnel by the Anne Arundel County Public Defender, *Wiener v. State,* 290 Md. 425, 428, 430 A.2d 588, 591 (1981); corruption of public officials in connection with the arrest, prosecution, and escape of an individual from the Baltimore County jail, *Green v. State,* 25 Md.App. 679, 682, 337 A.2d 729, 731, *cert. denied,* 275 Md. 749 (1975); *Irvin v. State,* 23 Md.App. 457, 459, 328 A.2d 329, 331 (1974), *aff'd,* 276 Md. 168, 344 A.2d 418 (1975); overpayment in state and county funds to school bus contractors in Charles County, *Maloney v. State,* 17 Md.App. 609, 614–15, 304 A.2d 260, 263–64, *cert. denied,* 269 Md. 761, 762, 767 (1973).

Mr. Bomhardt's attack on the Governor's direction to the Attorney General as being overly broad fails. The directive was supported by the clear language of the Maryland Constitution and by case law.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.