**INSTITUTE OF MISSION HELPERS OF BALTIMORE CITY AKA Mission Helpers of the Sacred Heart**

v.

**RELIANCE INSURANCE COMPANY.**

**Civ. No. HM–92–1285.**

United States District Court, D. Maryland.

Dec. 11, 1992.

Read K. McCaffrey, Marc S. Rosen, Andrew J. Toland, Roberta L. Kienast Daghir, Patton, Boggs & Blow, Baltimore, MD, for plaintiff.

Daniel E. Toomey, Michael A. Gatje, Donald G. Gavin, Wickwire Gavin, P.C., Vienna, VA, for defendant.

## MEMORANDUM

HERBERT F. MURRAY, Senior District Judge.

The plaintiffs, Institute of Mission Helpers of Baltimore City ("Mission Helpers"), a religious order organized under the laws of Maryland, filed this diversity action against Reliance Insurance Company ("Reliance"), a Pennsylvania corporation, based on two surety bonds executed by the parties. Presently before this Court are the motions of the defendant to dismiss several counts from the complaint and for a stay pending arbitration.

## I. MOTION TO DISMISS

A court may grant a motion to dismiss "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spaulding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). For the purposes of deciding the instant motion, this Court must take the material allegations of the complaint as admitted, *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1969), and further must construe those allegations favorably to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

In October 1989, Mission Helpers engaged Kasco–Chesapeake Builders, Inc. ("Kasco") to construct a new convent in Towson, Maryland. In connection with that project, the parties entered into a Labor and Material Payment Bond and a Performance Bond, with Reliance as the Surety, Kasco as the Principal, and Mission Helpers as the Obligee and Owner.

Because the convent was not substantially complete by the deadline set in the construction contract, Mission Helpers gave Kasco notice of its default and demanded that Reliance take over and complete the project under the terms of the Performance Bond. Reliance refused. Subsequently, as subcontractors made claims against Mission Helpers for payment of monies owed to them by Kasco, Mission Helpers demanded that Reliance pay those claims under the terms of the Labor and Material Payment Bond. Again, Reliance refused, and this litigation followed.

The plaintiff asserts six claims in its complaint—three causes of action for each of the two bonds at issue. Counts I and II each state a claim for breach of contract, and Reliance does not at this time seek dismissal of those claims. Each of the remaining claims lie in tort; Counts III and IV assert causes of action for breach of fair dealing and good faith, and Counts V

and VI assert causes of action for conversion. This Court will address those causes of action in turn.

### A. Breach of Fair Dealing and Good Faith

Mission Helpers argues in Counts III and IV that Reliance breached its duty of fair dealing and good faith when it refused either to take over the construction project or to satisfy the claims of the various subcontractors. Although charges of "bad faith" from an order of nuns would bring some defendants to their knees in supplication, Reliance has responded with a motion to dismiss for failure to state a claim.

 Under Maryland law, which the parties agree applies in this case, a contract of suretyship is a tripartite agreement between a principal obligor, his obligee, and a surety, whereby the surety becomes liable to the obligee at once upon the failure of the principal to perform. *General Motors Acceptance Corp. v. Daniels*, 303 Md. 254, 259, 492 A.2d 1306 (1985). The traditional rules of contract interpretation determine the liability of a surety. *Republic Ins. Co. v. Board of County Comm'rs*, 68 Md.App. 428, 431, 511 A.2d 1136 (1986) ("*Republic I*"); *Hospital for the Women of Maryland v. United States Fidelity & Guaranty Co.*, 177 Md. 615, 619, 11 A.2d 457 (1940) ("an ordinary covential [sic] bond is a simple contract").

 In *Republic I*, the County as obligee demanded that Republic Insurance Co. as surety honor its obligations under a performance bond. The resulting litigation proceeded to trial on the Board's claim of "bad faith on the insurance company." Reversing a jury verdict in favor of the County, the Maryland Court of Special Appeals wrote:

> Maryland does not recognize failure to perform a contract as giving rise to a tort action for "bad faith." Indeed, if the County were successful in its attempt, practically every breach of contract would give rise to an action in tort for "bad faith." Every breach of contract could, and probably would, result in claims in both contract and tort. The "bad faith" allegation would likely become a "boiler plate" averment in every suit for breach of contract.
>
> We refuse to employ some supposed "public policy" argument which would obfuscate the distinction between contract and tort by intertwining one with the other. Instead, we hold that a breach of contract does not, under the circumstances of this case, give rise to a tort action for "bad faith."

*Republic I*, 68 Md.App. at 432, 511 A.2d 1136. Finding that the circumstances in *Republic I* closely parallel the circumstances of this case, this Court concludes that this action sounds in contract alone and will dismiss the plaintiff's claims for breach of fair dealing and good faith.

In opposition to the motion to dismiss, the plaintiffs argue first, that the existence of a contract is not an absolute bar to an action in tort, and second, that under the language of the bonds at issue Reliance assumed a fiduciary relationship to the plaintiffs. With regard to the former argument, in certain cases involving both a breach of contract and a serious risk of death, Maryland courts have allowed plaintiffs to bring actions in tort. *E.g.*, *Council of Co-Owners Atlantis Condominium, Inc. v. Whiting–Turner Contracting Co.*, 308 Md. 18, 35, 517 A.2d 336 (1986). Of course, as the United States Supreme Court noted in the context of admiralty law, without limitations to distinguish the two, "contract law would drown in a sea of tort." *East River Steamship Corp. v. Transamerica Delaval Inc.*, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1985).

Apparently conceding the fact that it cannot assert either a tort claim or a hybrid tort/contract claim for breach of an *implied* covenant of fair dealing, *see Yuen v. American Republic Ins. Co.*, 786 F.Supp. 531 (D.Md.1992), the plaintiff maintains in its latter argument that the bonds affirmatively establish a fiduciary duty sufficient to support a claim for breach of fair dealing and good faith. In particular, the construction contract provides that Kasco "accepts the relationship of trust and confidence established by this Agreement ...,"

Complaint, Ex. A, ¶ 3.1, by which language Kasco accepted a duty of good faith and fair dealing toward Mission Helpers. *Jones v. J.H. Hiser Constr. Co.*, 60 Md. App. 671, 676–77, 484 A.2d 302 (1984). Because both of the bonds incorporate the construction contract by reference, the plaintiff argues, those bonds establish the same duty on behalf of Reliance. This Court disagrees.

The Performance Bond provides in part: KNOW ALL MEN BY THESE PRESENTS:

That Kasco Chesapeake Builders, Inc., 25 Main Street, Suite 300, Reisterstown, Maryland 21136, as Principal, hereinafter called Contractor, and Reliance Insurance Company, A Pennsylvania Corporation, Philadelphia, PA, as Surety, hereinafter called Surety, are held and firmly bound unto Mission Helpers of the Sacred Heart, 1001 West Joppa Road, Baltimore, Maryland 21204, as Obligee, hereinafter called Owner, in the amount of Three Million, Six Hundred and Ninety Seven Thousand, Three Hundred and Seven Dollars ($3,697,307.), for the payment whereof Contractor and Surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, Contractor has by written agreement dated October 25, 1989, entered into a contract with Owner for Construction of a new Center for the Mission Helpers of the Sacred Heart, Joppa Road & Chestnut Ave., Towson, Maryland 21204, in accordance with drawings and specifications prepared by Meyers & D'Aleo, Inc.—Architect, 1106 North Charles Street, Baltimore, Maryland 21201, which contract is by reference made a part hereof, and is hereinafter referred to as the Contract.

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Contractor shall promptly and faithfully perform said contract, then this obligation shall become null and void; otherwise it shall remain in full force and effect.

Complaint, Ex. C. The Labor and Material Payment Bond contains substantially similar language. Complaint, Ex. B. Nothing in either bond explicitly assigns to Reliance a duty of good faith and fair dealing, and the simple incorporation by reference of the construction contract does not indicate an intention of the parties to assign such a duty to Reliance.

Finally, perhaps because the surety here is an insurance company, or perhaps because Reliance in its motion to dismiss drew an analogy to insurance law, the plaintiffs argue that the duty of an insurer to exercise good faith when settling third party claims applies equally to the duty owed by sureties to obligees. In *Republic Ins. Co. v. Prince George's County*, 92 Md.App. 528, 608 A.2d 1301 (1992) ("*Republic II*"), the court applied insurance law principles to a surety agreement. However, that court did not permit the *obligee* to assert a claim of bad faith against the surety; instead, the surety could not collect indemnification from the *principal* because of a bad faith failure to settle the claims of the obligee. *Id.* at 538, 608 A.2d 1301. As in this case, the obligee in that case could recover only under a contract claim. Finding nothing in the opinion in *Republic II*, or any of the other cases cited to this Court, to indicate that a Maryland court would permit Mission Helpers to assert its hybrid tort/contract claim, this Court will dismiss Counts III and IV.

### B. *Conversion*

 Just as a breach of contract under Maryland law does not give rise to a claim in tort for breach of fair dealing and good faith, it does not give rise to a claim for conversion. *Fink v. Pohlman*, 85 Md.App. 106, 112–15, 582 A.2d 539 (1990). As the court in *Fink* noted, "to establish a conversion growing out of a contract, a positive tortious act beyond a mere breach of the contract is necessary." *Id.* at 115, 582 A.2d 539. Here, Mission Helpers cites no such positive tortious act; consequently, the plaintiff's claims for conversion must fail.

Citing *Caruso v. Republic Ins. Co.*, 558 F.Supp. 430 (D.Md.1983), the plaintiff argues that any unjustifiable withholding of payments constitutes conversion. *Id.* at 435. To the extent that the decision in *Caruso* supports such hybrid tort/contract claims based on an implied covenant to deal in "good faith," however, this Court has expressly disapproved it. *Yuen*, 786 F.Supp. at 533. The current law, as stated in *Pohlman*, requires dismissal of the plaintiff's conversion claims.

## II. MOTION FOR STAY

The construction contract provides for arbitration of "any controversy or Claim arising out of or related to the Contract, or the breach thereof." Arbitration proceedings in this matter commenced on November 6, 1991, when Kasco filed a demand for arbitration with the American Arbitration Association. Time and again, the Supreme Court and the Fourth Circuit have emphasized a federal policy that favors expeditious resolution of disputes through arbitration. *See, e.g., Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 478, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989); *Gilmer v. Interstate/Johnson Lane Corp.*, 895 F.2d 195, 196 (4th Cir.1990). On the authority of those cases, and finding that a stay would conserve judicial resources and avoid anomalous results, this Court will grant the stay.

## III. CONCLUSION

In sum, this Court will grant the motion to dismiss Counts III, IV, V and VI, and will also grant the motion to stay pending arbitration.

The Court will execute an Order on this date in accordance with the foregoing Memorandum.