# STATE OF MARYLAND *v.* ANDRE HUNTER

[No. 362, September Term, 1969.]

*Decided October 28, 1970.*

The cause was argued before MURPHY, C.J., and ORTH and THOMPSON, JJ.

*Alfred J. O'Ferrall, Special Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *John J. Garrity* and *Charles O. Fisher, Jr., Assistant State's Attorneys for Baltimore City,* on the brief, for appellant.

*Alan M. Wilner* for appellee.

MURPHY, C.J., delivered the opinion of the Court.

Appellee Hunter was indicted for storehousebreaking, larceny, and allied offenses on May 7, 1969. The case was scheduled for trial on July 17, 1969. Under circumstances hereinafter related, Judge Walter H. Moorman, sitting in the Criminal Court of Baltimore, dismissed the indictments for "lack of prosecution" and the State appealed.

As no stenographic record of the proceedings was made, we directed that Judge Moorman "certify the true circumstances and events under which the indictments were called to trial by him and dismissed for failure of prosecution." [1] Pursuant to this directive, Judge Moorman certified that on July 17, 1969, he was assigned to Part V of the Criminal Court of Baltimore; that he convened the court at 10:15 a.m. but no case on the docket was ready for trial that day; that thereafter, he was informed that appellee's case, involving two indictments, was to be transferred to his court from Part VI of the Criminal Court of Baltimore; that he conferred in chambers with the prosecutor concerning appellee's case and was told that the State was not then ready for trial because three of its police witnesses had not as yet reported. Judge Moorman further certified that the prosecutor advised him that he had conversed by phone with one of the police officers and was told "that he might possibly be able to appear about noon or the afternoon," although it was indefinite whether this officer would appear at all that day. Continuing his certification, the judge stated that the prosecutor told him that the police officers had been summoned; that in view of their failure to appear, he returned to the Bench for the purpose of issuing bench warrants to compel their appearance; but that upon making further inquiry, and from a review of the records, he determined that no summons had been issued for the police witnesses. The judge concluded his certification by stating:

"* * * Although other witnesses were present,

---

1. See Maryland Rule 1027a.

the Assistant State's Attorney did not elect to proceed with the trial. At this time, it was about noon. Thereupon, I dismissed the indictments for lack of prosecution." [2]

It is clearly to be gleaned from the substance of the certification that appellee's case was transferred to Judge Moorman's court for trial sometime between 10:15 a.m. and noon, and that the judge's action in dismissing the indictments immediately followed his discovery that the missing State's witnesses not only had not been summoned, as he was originally told by the prosecutor, but the appearance of at least one of them in court that day was, at best, uncertain. It further appears from the certification that while other witnesses "were present," the prosecutor "did not elect to proceed with the trial," and thereupon the indictments were dismissed for "lack of prosecution." Whether the trial judge actually called the case for trial, or whether the prosecutor made an affirmative election not to proceed to trial in the face of the court's demand that he then do so, cannot be ascertained from the judge's certification. It is clear, however, that the indictments were not dismissed on the ground that Hunter had been denied his constitutional right to a speedy trial; indeed, no motion for a speedy trial was ever filed, and only a few months had elapsed between indictment and scheduling the case for trial. It is equally clear that the dismissal of the indictments could in no event be based on any power of the court to enter a nolle

---

2. After the State entered its appeal from the lower court's action dismissing the indictments, the prosecutor sought to have included, as part of the record before us, his affidavit setting forth his version of the events leading up to the dismissal of the indictments. He alleged therein, among other things, that he requested a forty-five minute continuance to obtain his missing witness, but the trial judge refused to grant it. The appellee Hunter opposed the inclusion of the prosecutor's affidavit as part of the record, alleging that it was factually inaccurate. In view of this conflict, and in the absence of agreement between counsel and the court, we agree with Hunter's position that Judge Moorman's certification constitutes the sole and entire record on appeal. Accordingly, in determining the merits of the State's appeal, we confine ourselves solely to the matter contained in the certification.

prosequi to the indictments on its own motion, it being well settled that in the absence of a statute or governing rule of court, the power to enter a nolle prosequi to a valid indictment lies within the exclusive province and discretion of the State's Attorney.[3] *See Greathouse v. State,* 5 Md. App. 675; *People v. Sidener,* 375 P. 2d 641 (Calif.); *State v. Stevens,* 381 P. 2d 100 (Ariz.); *Malley v. State,* 69 S.W.2d 765 (Texas); Annotation, 69 A.L.R. 240 (Power of court to enter nolle prosequi or dismiss. prosecution) and cases there collected, particularly *State v. Anderson,* 26 S.W.2d 174 (Tex.); 21 Am.Jur.2d *Criminal Law,* Section 517. Nor does a trial judge possess power under the present state of Maryland law, either inherently or by statute or rule of court, to summarily dismiss a valid indictment prior to trial over the State's Attorney's objection upon the ground that there has been a "lack of prosecution" not amounting to the denial of the constitutional right to a speedy trial.** That trial judges under the federal practice would appear to be vested with such authority, as appellee points out, is because Rule 48 of the Federal Rules of Criminal Procedure expressly provides that the court may dismiss an indictment for "unnecessary delay in bringing a defendant to trial" — phraseology broader in scope and more encompassing than that underlying the constitutional right to a speedy trial. *See Mann v. United States,* 304 F. 2d 394 (App. D. C.); *United States v. Pack,* 247 F. 2d 168 (3rd Cir.). But, as indicated, unlike the federal practice, or the practice in some jurisdictions permitting courts, by statute, to dismiss indictments "in furtherance of justice," (*see State v. Gile,* 172 P. 2d 583 (Mont.), and *People v. Winter,* 342 P. 2d 538 (Calif.)) the law of Maryland, while recognizing the denial of the constitutional right to a speedy trial as a valid ground for the court's dismissal of an indictment, does not countenance such a dis-

---

3. Under Maryland Rule 711, the State's attorney can only enter a nolle prosequi in open court.

** Md. Rule 530, providing for the dismissal of an action "for lack of prosecution" is not applicable to criminal cases.

missal upon the court's own motion for mere "unnecessary delay" or "in furtherance of justice." *See Barnett v. State,* 8 Md. App. 35.

On the scant record before us, we hold that the dismissal of the indictments was an action beyond the power of the court. To so conclude is not to deny trial judges power and authority to control the course of criminal prosecutions in their courts. State's Attorneys, like other attorneys, are officers of the court and subject to its contempt powers where their conduct is deserving of such condemnation.[4] In any event, to dismiss a valid indictment of a grand jury prior to trial as a means to evidence the court's dissatisfaction with the prosecutor's pretrial performance, and particularly his failure to properly summons State witnesses, is simply not an appropriate sanction to be applied in such circumstances.

Delineating the powers and authority of the courts, in relation to that of the State's Attorney, is a matter of some difficulty, properly to be considered in light of the constitutional separation of powers doctrine. See Maryland Declaration of Rights, Article 8. For present purposes, we note only that the office of State's Attorney is not a branch of the judiciary, nor is it directly subject to its supervision. *See United States v. Shaw,* 226 A. 2d 366 (Dist. Ct. App. D. C.). Under the Constitution and laws of Maryland, the State's Attorney is a constitutional officer elected by the people and entrusted by them with the prosecution of persons accused of crime. The office is one of great dignity and commands great respect. A footnote pertaining to the office, its history, powers and duties is deemed appropriate and herewith included.[5]

---

4. We do not suggest that the prosecutor's conduct in the present case even remotely bordered on contempt.

5. Section 9 of Article 5 of the present Maryland Constitution (1867) provides that there "shall be an Attorney for the State in each county, and the City of Baltimore, to be styled the 'State's Attorney' "; Section 9 provides that the State's Attorney shall perform "such duties * * * as shall be prescribed by law." In implementation of these constitutional provisions, Maryland Code, Article 10, Section 34, provides that the State's Attorney shall "prosecute and defend, on the part of the State, all cases in which

Appellee contends that the State had no right to appeal from Judge Moorman's action dismissing the indict-

the State may be interested." The office of the State's Attorney being unknown to the common law, is possessed of no other powers than those prescribed by the constitution and statutes of the State. *Kilgour v. Evening Star Co.*, 96 Md. 16; *Hawkins v. State*, 81 Md. 306. But, as the court observed in *Wells v. Price*, 183 Md. 443, 446, "nowhere are these powers enumerated or defined." Despite this deficiency, it was concluded in *Brack v. Wells*, 184 Md. 86, 90, that State's Attorneys are vested "with broad official discretion to institute and prosecute criminal causes, subject generally to judicial control." Earlier, the court observed that the State's Attorney "represents the State in the realm of law enforcement" and was "in a very special sense an officer of the court." *Wells v. Price, supra*, at page 449.

It is evident from a review of Maryland constitutional history that the office of State's Attorney was carved out of the common law office of Attorney General. At common law in England, the Attorney General was entrusted with the management of all legal affairs and the prosecution of all suits, civil and criminal, in which the Crown was interested. See 7 Am.Jur.2d *Attorney General* Section 6. The first Maryland Constitution—that of 1776—provided that "the inhabitants of Maryland are entitled to the common law of England"; it provided for the office of Attorney General without defining the powers of the office. By Chapter 126 of the Acts of 1821, the duty was imposed upon the Attorney General, declaratory of those exercised by him at common law, "to prosecute and defend on the part of the State," all cases in which the State was interested, both civil and criminal, before the courts of the State. The office of Attorney General was eliminated in the Maryland Constitution of 1851. It was expressly therein provided that no law could thereafter be passed creating that office. The office of State's Attorney was created by the Constitution of 1851 in place of that of Attorney General, it being provided in Article 5, Section 2 thereof, that the State's Attorney "shall perform such duties * * * as are now prescribed by law for the Attorney General and his deputies, and such other duties, * * * as may hereafter be prescribed by law." In legislative implementation of this constitutional provision, the State's Attorney was vested by Chapter 177 of the Acts of 1862 with authority to "prosecute and defend on the part of the State all cases in which the State may be interested," including cases at the appellate level, civil as well as criminal. In the Maryland Constitution of 1864, provision was made for both the office of the Attorney General and that of State's Attorney in substantially the same form as is contained in the present Constitution, except that the State's Attorney's duties were stated to be those "now prescribed by law, and such other duties * * * as may hereafter be prescribed by law." The constitutional duty of the Attorney General under the Constitutions of 1864 and 1867 to prosecute and defend all cases in which the State may be interested contained no responsibility for prosecuting criminal cases at the trial level, this function devolving upon the State's Attorney by reason of his constitutional mandate, as implemented by statute.

It would appear that in Maryland the powers and duties formerly vested in the common law office of Attorney General

ments for lack of prosecution. In support of his position, appellee relies on several federal cases interpreting the scope of the government's right to appeal under the Federal Criminal Appeals Act, 18 U.S.C. 3731, which held that the government had no such right of appeal where indictments were dismissed for lack of prosecution. Needless to say, that Act is not applicable to State prosecutions in Maryland. Maryland Code, Article 5, Section 14, provides that the State may appeal to this court "from a final order or judgment granting a motion to dismiss, or quashing or dismissing any indictment * * * in a criminal action, * * *." We find the language of this statute sufficiently encompassing to permit the State to appeal in the instant case and find no intention on the part of the Legislature to restrict the State's right of appeal to cases where the dismissal was based on the legal insufficiency of the indictment.

Appellee also suggests that the State has no right of appeal because, if the order appealed from is reversed, and a new trial ordered, appellee would be placed in double jeopardy. We find no merit in the contention. See *Kyle v. State,* 6 Md. App. 159; *Boone v. State,* 3 Md. App. 11. We see nothing in *Benton v. Maryland,* 395 U. S. 784, relied upon by appellee, dictating a contrary conclusion.

> *Order dismissing indictments reversed; indictments reinstated, and case remanded for further proceedings.*

---

with respect to the conduct of criminal prosecutions at the trial level passed to the State's Attorney. While the State's Attorney was possessed of no common law powers of his own, we think it the obvious intention of the Legislature in broadly providing by statute that the State's Attorney "prosecute and defend, on the part of the State, all cases in which the State may be interested" to invest that constitutional officer with the same powers respecting the prosecution of criminal cases as were formerly possessed by the Attorney General at common law. See 42 Am. Jur. *Prosecuting Attorneys* Section 9; 27 C.J.S. *District and Prosecuting Attorneys* Section 10.